**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

GARY A. AVANT,              )
                              )
                              )
                              )
          **Plaintiff,**        )
                              )
v.                             )        **Case No. CIV-20-067-RAW**
                              )
KEN DOKE, individually and in his    )
official capacity as a County Commissioner )
for Muskogee County,        )
                              )
                              )
                              )
                              )
          **Defendant.**       )

## <u>ORDER</u>

Before the court are the motion of the plaintiff for partial summary judgment and the motion of the defendant for summary judgment. The factual background has been set forth in the Tenth Circuit opinion remanding this case "for further development of the record." *Avant v. Doke,* 2022 WL 2255699, *4 (10th Cir.2022). The court incorporates by reference the section marked "A. Factual History." *Id.* at *1.

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(a) F.R.Cv.P. The court views all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Wahlcometroflex, Inc. v. Westar Energy, Inc.,* 773 F.3d 223, 226 (10th Cir.2014). Cross-motions for summary

judgment are to be treated separately; the denial of one does not require the grant of another. *Ultra Clean Holdings, Inc. v. TFG-California, L.P.,* 534 Fed.Appx. 776, 780 (10th Cir.2013). When the parties file cross-motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts. *Id.[1]*

The plaintiff alleges that defendant, in terminating plaintiff's employment, violated plaintiff's right to free speech under the First Amendment. "To account for the complexity associated with the interplay between free speech rights and government employment, this Court's decisions in *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563 (1968), *Garcetti* [*v. Ceballos]* 547 U.S. 410 [(2006)] , and related cases suggest proceeding in two steps. The first step involves a threshold inquiry into the nature of the speech at issue. If a public employee speaks 'pursuant to [his or her] official duties,' this Court has said the Free Speech Clause generally will not shield the individual from an employer's control and discipline because that kind of speech is – for constitutional purposes at least – the government's own speech." *Kennedy v. Bremerton School Dist.,* 142 S.Ct. 2407, 2423 (2022)(citation omitted).

"At the same time and at the other end of the spectrum, when an employee 'speaks as a citizen addressing a matter of public concern, 'our cases indicate that the First Amendment may be implicated and courts should proceed to a second step. At this second step, our cases

---

[1]The two motions are true cross-motions only as to plaintiff's official capacity claim.

2

suggest that courts should attempt to engage in 'a delicate balancing of the competing interests surrounding the speech and its consequences.' Among other things, courts at this second step have sometimes considered whether an employee's speech interests are outweighed by "'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (citation omitted).

As the Tenth Circuit notes, however, "[t]his is not a typical public employee speech case. The employer, Commissioner Doke, fired Mr. Avant for perceived, not actual, speech, and it is not clear whether and how each of the *Garcetti/Pickering* elements should apply to a perceived speech claim." *Avant,* 2022 WL 2255699, *4 (10th Cir.2022).[2] "[*Heffernan v. City of Paterson,* 578 U.S. 266 (2016)] recognized a public employee's First Amendment protection from retaliation for perceived speech." *Id.* at *7[3]

---

[2] Defendant argues that there is currently no pending free speech claim, because plaintiff never filed an amended complaint. (#129 at 8-10; #131 at 5). This court rejected this view in its subsequent order (#133) denying plaintiff's motion to amend as moot or unnecessary. *See also Avant,* 2022 WL 2255699, *3 (10th Cir.2022)("The court did not request Mr. Avant to amend the complaint. On appeal, Commissioner Doke does not adequately develop an argument that this expansion of the First Amendment claim or lack of amendment was error"). Moreover, in saying "this is not a *typical* public employee speech case," the appellate court acknowledged that a speech claim was before the court.

[3] In *Heffernan,* a police officer was demoted after he was seen carrying a yard sign for a political opponent of the city's incumbent mayor. His demotion was based on a factual mistake in that his supervisors believed he was involved in the opponent's campaign. Plaintiff denied such involvement and asserted he was merely picking up a yard sign as an errand for his bedridden mother. The Supreme Court (analogizing to *Waters v. Churchill,* 511 U.S. 661 (1994)) held that the officer could nevertheless bring a claim alleging the violation of a constitutional right that he conceded he did not exercise. "[T]he Supreme Court held that the employer's reason for taking an adverse employment action against an employee determines whether there has been a First Amendment violation regardless of whether the employee engaged in protected activity." *Avant,* at *6. In *Bird v. West Valley City,* 832 F.3d 1188 (10th Cir.2016), "the public employer mistakenly believed the employee had made an anonymous call to a reporter that led to a newspaper article portraying the employer in a negative light." *Avant* at *7. The Tenth Circuit held that "the employee could prevail on her First Amendment claim even if she did not make the call but the employer '*believed* she was engaged in a constitutionally protected activity.'" *Id.*

Therefore, the matter is before this court "for development and consideration of whether the full *Garcetti/Pickering* test applies in a perceived speech case and, if not, how it should be appropriately tailored." *Id.* at *4.[4] Defendant testified he fired plaintiff primarily based on the following: (1) the Rollands reported that plaintiff was telling people in the community that a road project had been designed so a new fence could be built on Mr. Rolland's property at County expense; (2) complaints (from an unidentified source) that plaintiff was telling people in the community that a County employee who was a registered sex offender had been assigned to work near a school. *See Avant,* 2022 WL 2255699, *1 (10th Cir.2022). *See also* #39-2 at page 27 of 32 in CM/ECF pagination, ll.1-4.

The *Pickering/Garcetti* analysis employs a five-part test. The factors are: (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. *Avant,* at *4. The first three

---

[4]In an odd footnote, plaintiff asserts that defendant has done an about-face and defendant is now contending plaintiff actually did make the statements in question, and thus the application of *Garcetti/Pickering* to a case of perceived speech is moot. (#130 at n.6). This is contrary to the court's reading of the briefs and, more importantly, contrary to the Tenth Circuit mandate. In connection with the present briefing, plaintiff continues to assert: "I did not spread any rumors on any subjects." (#130-15, ¶4). Defendant asks that plaintiff's declaration be excluded as post-discovery (#131 at 3). The court only relies on the quoted sentence, the subject matter of which has been addressed in discovery.

elements concern whether the speech is protected and are issues of law for the court to decide. The last two concern whether an adverse action was taken because of the protected speech and are factual issues typically decided by the jury. *Id.* "In a typical public employee free speech case, the plaintiff must establish all five elements." *Id.*

Having set out this general background, however, the court notes that defendant's motion asserts the defense of qualified immunity. This requires a different analysis, including the burden of proof. Where a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established. *Kapinski v. City of Albuquerque,* 964 F.3d 900, 905 (10th Cir.2020). "This is a heavy burden. If the plaintiff fails to satisfy either prong of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne,* 847 F.3d 1203, 1208 (10th Cir.2017).[5]

Tenth Circuit authority also directs that the defense be addressed first. "If, and only if, the plaintiff meets this two-part test does a defendant bear the traditional burden of the movant for summary judgment." *Kapinski,* 964 F.3d at 905. The court may address these two inquiries in any order. *McCowan v. Morales,* 945 F.3d 1276, 1282 (10th Cir.2019). If

---

[5]Still further, when the qualified immunity inquiry turns on a subjective element, such as motive, the analysis is modified slightly. *McBeth v. Himes,* 598 F.3d 708, 724 (10th Cir.2010). The defendant must do more than merely raise the qualified immunity defense; he must make a prima facie showing of the objective reasonableness of the challenged conduct. *Id.* The parties have not addressed this aspect, and the court is persuaded the record does not establish such a prima facie case, for reasons to be discussed.

The district court in *Bird v. West Valley City,* 2017 WL 4326485 (Utah 2017), described this as an "initial requirement before the court embarks on the traditional qualified immunity inquiry." *Id.* at *9. Under the circumstances, this court has nevertheless engaged in the traditional discussion.

the plaintiff fails to satisfy either test, the court must grant qualified immunity. *Id.*[6]  The Tenth Circuit discussed both prongs in its opinion, *Avant,* at **3-6. and therefore this court will as well.

The court turns to the claim's elements.  As to the first, speech is made pursuant to official duties if it is generally consistent with the type of activities the employee was paid to do. *Wright v. Kay County Justice Faciliites Auth.,* 2023 WL 2822122, * 5 (10th Cir.2023).  Defendant concedes the first element.  "Defendant has never presented any argument that the perceived speech was made pursuant to Plaintiff's duties as a truck driver."  (#131 at 6).  Therefore, under this element, plaintiff spoke as a private citizen.

The parties dispute the second element.  Matters of public concern are those of interest to the community, whether for social, political, or other reasons.  *Lamb v. Montrose Co. Sheriff's Office,* 2022 WL 487105, *6 (10th Cir.2022).  Courts construe "public concern" very narrowly.  *Id.*  In determining whether the speech was about a matter of public concern, the court must consider the content, form, and context of the speech as revealed by the whole record.  *Avant,* at *4.  Context involves determining whether the employee's *primary* purpose

---

[6]Qualified immunity "is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or officials sued in their official capacities."  *Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.,* 569 F.3d 1244, 1263 n.4 (10th Cir.2009).  Defendant is sued in both capacities in this litigation.  The court previously granted (#128) defendant's motion to strike certain deadlines pending the court's resolution of his qualified immunity defense.

was to raise a matter of public concern rather than to air a personal dispute. *Id.* (emphasis in original).[7]

In an ordinary case of this type, "[i]n drawing the thin line between a public employee's speech which touches on matters of public concern, and speech from the same employee which only deals with personal employment matters, [the court] looks to the subjective intent of the speaker." *Workman v. Jordan,* 32 F.3d 475, 483 (10th Cir.1994).

"But a perceived speech case, as here, presents the question of whether a modified *Garcetti/Pickering* standard must apply given the inability to assess the intent of a speaker who has not spoken." *Avant,* at *4. Defendant argues that, plaintiff's intent being unavailable, it is Doke's and Burgess's understanding which controls: "Consequently, it is Doke's and Burgess' understanding of the speech's meaning and intent which determines whether the speech was on a matter of public concern and whether a constitutional violation occurred." (#122 at page 19 of 32 in CM/ECF pagination). "In other words, there is no First Amendment violation when an employer terminates an employee for speech the employer *reasonably* believes was on a matter of private, not public, concern, even if that belief was mistaken." (#122 at page 20 of 32 in CM/ECF pagination)(emphasis added).

The defendant's formulation is correct as written but this court has emphasized a critical term in the sentence. As previously stated, the Court in *Heffernan* placed reliance on

---

[7]Oklahoma law prohibits a registered sex offender from employment on school premises. 57 O.S. §589(A). This was not the allegation defendant perceived plaintiff to have made. Still, the perceived speech appears to qualify as a matter of public concern, perhaps in the realm of public safety.

*Waters v. Churchill,* 511 U.S. 661 (1994). In *Waters,* a nurse claimed she was discharged because she criticized the hospital's "cross-training" policy that allowed nurses from one department to work in another department, and that this reduced the quality of nursing care in the hospital's obstretrics deparmtnet. The employer received two different versions of plaintiff's speech; one version would have been protected under the First Amendment while the other could permissibly have served as the basis for plaintiff's discharge. *Id.* at 665-66.

The Court in *Waters* addressed the factual basis by which an employer makes the decision and how a court should review the decision. The Court said: "we do not believe that the court must apply the [First Amendment] test only to the facts as the employer thought them to be, without considering the *reasonableness* of the employer's conclusions. . . It is necessary that the decisionmaker reach its conclusion about what was said in good faith, rather than as a pretext; but it does not follow that good faith is sufficient." 511 U.S. at 677. (emphasis added). There may not always be a clear line of demarcation between the legal and factual from the employer's point of view.[8] Of necessity, however, the court must

---

[8]Often described as a "factual" mistake is the employer's view of the legal status of the purported statement. "If an employment action is based on what an employer supposedly said, and a reasonable supervisor would recognize that *there is a substantial likelihood that what was actually said was protected,* the manager must tread with a certain amount of care." *Waters,* 511 U.S. at 677 (emphasis added).

In describing *Waters,* the Supreme Court has taken account of the employer's view of both the factual and the legal: "The employer wrongly, though reasonably, believed that the employee had spoken only on personal matters not of public concern, and the employer dismissed the employee for having engaged in that unprotected speech. The employee, however, had in fact used words that did not amount to personal 'gossip' (as the employer believed) but which focused on matters of public concern. The Court asked whether, and how, the employer's *factual* mistake mattered." *Heffernan,* 578 U.S. at 272 (emphasis added).

*See also Bird,* 832 F.3d at 1212 ("*Heffernan* clearly governs Plaintiff's First Amendment retaliation claim, for Plaintiff was a public employee who claims her municipal employer discharged her based on its belief that she engaged in constitutionally protected activity.").

resolve the legal question as a predicate to determining the reasonableness of the employer's determination.  Still, an employer may be liable if it acts "out of a desire to prevent the employee from engaging in political activity that the First Amendment protects . . . even if, as here, the employer makes a *factual* mistake about the employee's behavior."  *Heffernan,* 578 U.S. at 273.  In *Waters,* the employer had to resolve two different versions of actual speech.  In *Bird,* the employer believed the employee leaked statements to the press (a protected activity), which she denied.

In any event, in the case at bar, the court does not conclude the employer's characterization of plaintiff's perceived speech was reasonable.  Defendant asserts: "[t]he record demonstrates that Burgess and Doke did not believe Plaintiff was trying to bring misconduct to light, but was instead gossiping and airing personal grievances."  (#122 at page 21 of 32 in CM/ECF pagination).  Even if the court accepts this as accurate, the inquiry is not over.  In applying the *Pickering/Garcetti* test, the court must ascertain the factual basis from which the employer made its decision.  "[T]he *Waters* Court instructed lower courts to take a deferential approach: when an employer's decision rests on a *reasonable* belief about the contents of the speech, formed *after an objectively reasonable investigation* of the facts to determine what the employee actually said, then the court should not second-guess the employer's decision, even if the employer was wrong and the speech was entitled to protection."  *Cutler v. Stephen F. Austin State Univ.,* 767 F.3d 462, 470 (5th Cir.2014)(emphasis added)(citing *Waters,* 511 U.S. at 677-78)).

The court declines to hold that defendant conducted an objectively reasonable investigation. Most obviously, defendant discharged plaintiff under the belief that plaintiff *had uttered* the speech in question. Evidently, only in this litigation has it been made known that plaintiff denied making the statements, and the lawsuit is now one over "perceived speech."[9] "Generally, without at least asking an employee what [he] said, an employer's indispensable investigation into whether an employee's speech was protected will not be reasonable." *Salge v. Edna Indep. Sch. Dist.,* 411 F.3d 178, 193 (5th Cir.2005).[10]

Additionally, the Tenth Circuit has come close to resolving the issue in this case as a matter of definition: "Speech concerning potential illegal conduct by government officials is inherently a matter of public concern." *Brammer-Hoelter v. Twin Peaks Charter Academy,* 492 F.3d 1192, 1206 (10th Cir.2007). Speech involves a matter of public concern when the speaker intends to bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety or other malfeasance within a governmental entity. *Eisenhour v. Weber Cty.,* 744 F.3d 1220, 1228 (10th Cir.2014).

---

[9]"Likewise, it may be unreasonable for an employer to act based on extremely weak evidence when strong evidence is clearly available – if, for instance, an employee is accused of writing an improper letter to the editor, and instead of just reading the letter, the employer decides what it said based on unreliable hearsay." *Waters,* 511 U.S. at 677.

[10]Defendant asserts a meeting took place in May 2018 during which plaintiff was told to "stop making disparaging remarks about people in the community." (#122 at page 11 of 32 in CM/ECF pagination, ¶15). Plaintiff admits such a meeting took place but characterized the defendant's concern as whether plaintiff "was calling Ken Doke a liar" and regarding material plaintiff's son was allegedly putting on Facebook. (#122-1 at page 23 of 41 in CM/ECF pagination). The record is unclear why plaintiff did not inquire of Doke and Burgess about the source for plaintiff's alleged statements or why Doke and Burgess did not inquire if plaintiff made the specific statements for which he was (at least in part) ultimately terminated.

In a case of "actual" speech, a defendant could present evidence of the plaintiff's actual intent and thereby rebut the presumption that speech of this type should be characterized as a matter of public concern.  Here, in a case of perceived speech, defendant has no such recourse.  Even in a perceived speech case, perhaps after conducting a formal, objective investigation, a defendant could establish he had a reasonable belief that the perceived speech was mere gossip.  The present defendant has not done so.[11]

The third element is whether the employee's interest in commenting on the issue outweighs the interest of the state as employer.  *Wright v. Kay County Justice Facilities Auth.*, 2023 WL 2822122, *5 (10th Cir.2023).[12]  Once again, there are difficulties in applying this balancing test in a case of perceived speech.  On one side of the scales, in a sense the plaintiff has no interest, as he did not speak.[13]  On the other side, the only public employer interest that outweighs the employee's free speech interest is avoiding direct disruption, by

---

[11]Defendant also argues "the statements Burgess and Doke believed Plaintiff made were maliciously false and Plaintiff knew them to be false."  (#122 at page 22 of 32 in CM/ECF pagination).  The Tenth Circuit has stated: "It is difficult to see how a maliciously or recklessly false statement could be viewed as a matter of public concern."  *Wulf v. City of Wichita,* 883 F.2d 842, 859 n.24 (10th Cir.1989).  This appears to be another aspect of the traditional analysis which is unworkable in the realm of perceived speech. Plaintiff did not in fact speak, so the statements cannot be "*maliciously or recklessly* false."

[12]"Although the third element must weigh in favor of the plaintiff for the plaintiff to prevail on the First Amendment claim, the employer bears the burden on the third element."  *Duda,* 7 F.4th at 912.

[13] Defendant argues that "[b]ecause Defendant's interest in restraining the speech obviously outweighed any interest Plaintiff had in making it (since he claimed he did not even make the speech at all), Defendant Doke in his individual capacity is entitled to summary judgment in his favor."  (#122 at page 25 of 32 in CM/ECF pagination).  Such a test would mean a defendant always prevailed in a case of perceived speech.  The proper test in a case of perceived speech is presumably that, based on content alone, a plaintiff who spoke words squarely within the realm of public concern (addressing malfeasance) would have a strong interest.

the speech itself, of the public employer's internal operations and employment relationships. *Helget v. City of Hays, Kansas,* 844 F.3d 1216, 1222 (10th Cir.2017). Defendant has not demonstrated that such took place.

Such a demonstration is understandably difficult in this case, as it requires proof that non-existent speech was disruptive or even potentially disruptive.[14] Defendant has demonstrated vague effects such as "negative impact on employee morale" and "creating a negative atmosphere at work." (#122 at 24 of 32). In the court's view, such effects do not rise to the level of disruption. "Potential disruption" is necessarily speculative, but a method to nip potential disruption in the bud would have been to determine whether the negative effects were being caused by the spreading of hearsay, rather than actual speech.

If the employee's interest outweighs that of the employer, the employee must show (the fourth element) that his speech was a substantial factor or a motivating factor in a detrimental employment decision. *Wright,* \*5. Although causation is ordinarily a factual issue for the jury, summary judgment is appropriate when there simply is no evidence in the record from which a trier of fact could reasonably conclude the protected speech was a motivating factor in the plaintiff's termination. *See Cypert v. Ind. Sch. Dist. No. 1-050,* 661 F.3d 477, 484 (10th Cir.2011). Defendant has presented no argument in this regard, as Mr. Doke admitted that the speech was the reason for termination.

---

[14]*Trant v. Oklahoma,* 754 F.3d 1158, 1166 (10th Cir.2014)(employer need not show actual disruption). This court previously held that actual disruption must be shown because of delay in the employment action. (#60 at 8). *See Kent v. Martin,* 252 F.3d 1141, 1144 (10th Cir.2001). In other words, delay dissipates reliance on *potential* disruption.

Summary judgment is appropriate on the fifth step when any reasonable jury would have found that the plaintiff would have been terminated even absent any desire on the defendant's part fo punish him in retaliation for his allegedly protected speech. *Roberts v. Winder,* 16 F.4th 1367, 1383 (10th Cir.2021). At this step, the burden remains with the defendant. *Id.* Defendant contends "Plaintiff was terminated as a result of an accumulation of a number of issues regarding demeanor and performance." (#122 at 25 of 32). The court finds, balanced against Mr. Doke's affirmative statement of firing plaintiff for speech, [#124-2 at pages 26 of 32 l.21 - page 27 of 32 l.4] defendant has not established this matter clearly enough to grant summary judgment. The fifth element is ordinarily for the trier of fact, and that is the appropriate result here.

This court [in order #133 at 4-5] also has permitted defendant (without filing an amended answer) to assert the affirmative defense recognized in *Heffernan.* This permits discharge when a neutral policy existed and the employee's supervisors were indeed following it. *Avant*, at *5. The policy must also comply with constitutional standards. *Id.*[15] In this regard, defendant points to #122-12, which describes "Guidelines for Appropriate Conduct" for a Muskogee County employee.

The court finds, for purposes of the present motion, that a neutral policy existed and that defendant was following it. Defendant argues that the policy does not prohibit speech concerning any particular subject matter or content, but rather requires that employees

---

[15]"The Court did not explain what makes a policy comply with constitutional standards." *Duda v. Elder,* 7 F.4th 899 n.7 (10th 2021).

maintain harmonious relationships with the public and with fellow employees.  Further, that an employee respect the rights and feelings of others, and refrain from any behavior that might be harmful to the employee, "your co-workers, and/or Muskogee County, or that might be viewed unfavorably by the public at large."  The policy also prohibits "[i]nsubordination or willful refusal to follow an order."  Finally, the policy provides that "[t]he level of severity of any infraction is solely at the discretion of the Elected Official."

At first blush, by analogy to a city ordinance, the policy seems unconstitutionally broad and vague, while also conferring unfettered and standardless discretion on the enforcing official.  *See City of Houston v. Hill,* 482 U.S. 451 (1987).  Showing respect for the feelings of others and refraining from behavior that might be viewed unfavorably by the public at large covers a universe of conduct.

The Court in *Waters*, however, stated in passing "[g]overnment employee speech must be treated differently with regard to procedural requirements as well.  For example, speech restrictions must generally precisely define the speech they target.  Yet surely a public employer may, consistently with the First Amendment, prohibit its employees from being 'rude to customers," a standard almost certainly too vague when applied to the public at large."  511 U.S. at 673.

This court concludes, consistent with the rest of the analysis in this case, that application of even a neutral policy take place after a proper factual basis has been determined as the result of a reasonable investigation.  It would not be proper to discharge

an employee for being "rude to a customer" if the employee had not in fact been rude to a customer.  For reasonable application of the policy, an investigation must determine (1) whether the employee engaged in actual speech and (2) only then determine the content of the speech.  "Only procedures outside the range of what a reasonable manager would use may be condemned as unreasonable."  *Id.* at 678.

In sum, the court finds that plaintiff has met his burden of proof as to the five elements of the *Garcetti/Pickering* test and that defendant has failed to meet his burden of proof as to the affirmative defense provided by *Heffernan.*  Accordingly, the court finds that the first prong of the qualified immunity inquiry, [plaintiff must show that a reasonable jury could find facts supporting a violation of a constitutional right, *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1272 (10th Cir.2022)]  has been satisfied.

The second prong is that plaintiff must show that the right was clearly established at the time of the violation.  *Id.*  In remanding, the Tenth Circuit "conclud[ed] that a right to be free of retaliation for perceived speech was clearly established when Commissioner Doke fired Mr. Avant in November 2018."  *Avant,* at *7.  This statement, however, was in connection with the argument that *Heffernan* was limited to claims of political activity and did not extend to claims of free speech.  The appellate court made clear that this court was to engage in additional analysis.

In the case at bar there is some overlap between the discussion of the prongs of qualified immunity inasmuch as the *Garcetti/Pickering* elements also bear on the merits of

15

whether there was a constitutional violation (i.e., the first prong).[16]  In remanding, the Tenth Circuit said "[t]he underdeveloped record raises questions about the district court's treatment of prong two of qualified immunity."  *Avant,* at *5.  This court cited a broad, general statement in *Casey v. West Las Vegas Independent School District,* 473 F.3d 1323, 1333-34 (10th Cir.2007) as satisfying the "clearly established" prong.  On interlocutory appeal, the Tenth Circuit has strongly hinted that this was insufficient.  Rather, as to the *Garcetti/Pickering* elements, the Tenth Circuit has taken "an element-by-element approach to the second prong of the qualified immunity analysis with respect to both elements one and two."  *Avant,* at *5.  This court was directed to consider "whether an element-based approach is necessary at prong two."  *Id.* at *6.  This court concludes that it is.[17]  In other words, it is plaintiff's burden to show the law was clearly established with respect to both elements one and two.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix v. Luna,* 7, 11 (2015).  "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right."  *A.N. ex rel. Ponder v. Syling,* 928 F.3d 1191, 1197 (10th Cir.2019).  The precedent is considered on point if it involves materially similar

---

[16]*See Knopf v. Williams,* 884 F.3d 939, 958 (10th Cir.2018)(Ebel, J., dissenting).

[17]"A general test defining the elements of constitutional violation, such as the *Garcetti/Pickering* test, will not provide clearly established law in anything but 'an obvious case.'" *Bailey v. Indep. Sch. Dist. No. 69,* 896 F.3d 1176, 1184 (10th Cir.2018).  This passage is quoted in *Avant* at *6.

conduct or applies with obvious clarity to the conduct at issue. *Lowe v. Raemisch,* 864 F.3d 1205, 1208 (10th Cir.2017)(emphasis and citations omitted). "[A] case directly on point" is not necessary if "existing precedent [has] placed the statutory or constitutional question beyond debate." *White v. Pauly,* 580 U.S. 73, 79 (2017). "General statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question." *Halley v. Huckaby,* 902 F.3d 1136, 1149 (10th Cir.2018). Plaintiff need not show the very act in question previously was held unlawful. *Gutierrez v. Cobos,* 841 F.3d 895, 900 (10th Cir.2016).

In a public employee speech case, courts must not define clearly established law at a high level of generality. Instead, the clearly established law must be particularized to the facts of the case. *Avant* at *6.

Defendant conceded the first element as a matter of fact. Defendant has also made no argument against finding this element clearly established as a matter of law at the time of the litigated events. Plaintiff also makes this point. (#130 at page 30 of 32 in CM/ECF pagination). The court finds Doke could not have reasonably believed, at the time he fired plaintiff, that he could fire an employee for making statements to outside community members regarding possible malfeasance on the part of the County under the belief that plaintiff spoke as part of his official job duties. *See Knopf,* 884 F.3d at 949. Plaintiff has met his burden to show that the law was clearly established with respect to the first element.

17

Turning to the second element, the court finds that plaintiff has met his burden here as well.  As stated, it is clearly established that speech disclosing illegal conduct by government officials is inherently a matter of public concern.  *Rogers v. Riggs,* 71 F.4th 1256, 1260 (10th Cir.2023); *see also Lee v. Nicholl,* 197 F.3d 1291, 1296 (10th Cir.1999)(public employees' speech alleging a danger to public health or safety is protected by the First Amendment).

Defendant asserts: "Even if this Court finds that Defendant Doke could have violated Plaintiff's First Amendment rights, certainly there was no precedent squarely governing such that it is beyond debate that a constitutional violation occurred.  Considering the particularized facts of this case specific to Defendant Doke and the qualified immunity inquiry as to him, there is no published decision of the United States Supreme Court or the Tenth Circuit Court of Appeals which would have placed Defendant Doke on notice that his acts or omissions with respect to Plaintiff were in violation of Plaintiff's clearly established constitutional rights."  (#122 at page 17 of 32 in CM/ECF pagination).

As previously discussed, defendant asserts: "[t]he record demonstrates that Burgess and Doke did not believe Plaintiff was trying to bring misconduct to light, but was instead gossiping and airing personal grievances."  (#122 at page 21 of 32 in CM/ECF pagination).  Also, "there is no decision which has recognized a First Amendment violation for terminating an employee in part based on a mistaken belief the employee was engaging in an activity which the employer thought was *not* constitutionally protected.  In fact,

18

established law says the First Amendment is *not* violated in that situation."   (#131 at

10)(emphasis in original)(citations omitted).   On the contrary, the Supreme Court in *Waters*

said that cited cases "establish a basic First Amendment principle: Government action based

on protected speech may under some circumstances violate the First Amendment even if the

government actor honestly believes the speech is unprotected."   511 U.S. at 669.

In discussing *Waters,* the Court in *Heffernan* described it thus: "In that case the Court

did consider the consequences of an employer mistake.   The employer wrongly, though

reasonably, believed that the employee had spoken only on personal matters not of public

concern, and the employer dismissed the employee for having engaged in that unprotected

speech.   The employee, however, had in fact used words that did not amount to personal

'gossip' (as the employer believed) but which focused on matters of public concern. . . .In

a word, it was the employer's motive, and in particular the facts as the employer reasonably

understood them, that mattered.   In *Waters,* the employer reasonably but mistakenly thought

that the employee *had not* engaged in protected speech."   578 U.S. at 272 (emphasis in

original).   In the case at bar, the court has found that the defendant *unreasonably* and

mistakenly thought that the plaintiff had not engaged in protected speech.

Even when considering whether the law was clearly established, the court must view

the facts in the light most favorable to the plaintiff.   *Estate of Smart by Smart v. City of

Wichita,* 951 F.3d 1161, 1176 (10th Cir.2020).   As it did in its first-prong analysis, the court

finds that a determinative analytical word has not been addressed.   "[Defendant] is entitled

19

to qualified immunity if a *reasonable* administrator could have believed that Plaintiff was motivated primarily by personal grievance.  This belief may have been wrong, but so long as the error was *reasonable*, he is immune." *Singh v. Cordle,* 936 F.3d 1022, 1036 (10th Cir.2019)(emphasis added).  In the present context, "reasonableness" reflects reliance upon a proper investigation.

In *Waters v. Churchill,* 511 U.S. 663 (1994), the Court stated: "Applying the foregoing to this case, it clear that if petitioners really did believe Perkins-Graham's and Ballew's story, and fired Churchill because of it, they must win.  Their belief, *based on the investigation they conducted*, would have been entirely reasonable." *Id.* at 679-680 (emphasis added).  Again, in the case at bar the record does not reflect an investigation, and under clearly established law the discharge was therefore unreasonable and not a basis for qualified immunity.  An investigation was also necessary in this case because under Tenth Circuit precedent, "[s]peech concerning potential illegal conduct by government officials is inherently a matter of public concern." *Brammer-Hoelter v. Twin Peaks Charter Academy* 2 F.3d 1192, 1206 (10th Cir.2007).

Also, this court returns to *McBeth v. Himes,* 598 F.3d 708 (10th Cir.2010), discussed in footnote 5 of this order.  Under the facts of this case, a defendant who does not conduct the investigation required by *Waters* cannot make a prima facie showing of the objective

20

reasonableness of the challenged conduct. The investigation is the essence of objective reasonableness. Qualified immunity fails on this basis as well.[18]

As stated previously, if the plaintiff defeats qualified immunity, the defendant bears the traditional burden of the movant for summary judgment – showing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. *See Rojas v. Anderson,* 727 F.3d 1000, 1003 (10ᵗʰ Cir.2013); Rule 56(a) F.R.Cv.P. In its discussion as to prong one of qualified immunity, the court has determined that a reasonable jury could find for plaintiff on all five elements of the *Garcetti/Pickering* test. Therefore, defendant is not entitled to judgment as a matter of law.

Plaintiff also sues defendant in his official capacity, and both parties have moved for summary judgment as to this claim. As previously stated, qualified immunity is not an available defense to an official capacity suit. A suit against a local government official in his official capacity is treated as a suit against the local government entity itself. *See Cox v. Glanz,* 800 F.3d 1231, 1254 (10ᵗʰ Cir.2015). To establish liability against the County, plaintiff must show (1) that Commissioner Doke committed a constitutional violation and (2) that a Muskogee County policy or custom was the moving force behind the constitutional deprivation. *See Campbell v. City of Spencer,* 777 F.3d 1073, 1077 (10ᵗʰ Cir.2014).

---

[18]This court notes that *McBeth* is not cited as a matter of course by the Tenth Circuit in First Amendment retaliation cases where qualified immunity is asserted. The decision is cited in the unpublished decision *Bird v. Regents of New Mexico State Univ.,* 619 Fed.Appx. 733, 744 (10ᵗʰ Cir.2015). This court must follow controlling precedent as best it can.

A municipal policy or custom may take the form of a decision by employees with final policy-making authority. *Waller v. City & Cnty. of Denver,* 932 F.3d 1277, 1283 (10th Cir.2019). A county commissioner has final decision-making authority over the hiring and firing of employees within that district. *See Henry v. Okla. Cty. Bd. of Cty. Comm'rs,* 182 F.3d 931 (10th Cir.1999). Defendant concedes the point (#11 at 2 ¶15).

As to plaintiff's motion, when the moving party has the burden of proof at trial, "a more stringent summary judgment standard applies." *Pelt v. Utah,* 539 F.3d 1271, 1290 (10th Cir.2008). To obtain summary judgment on its own claim or defense, a movant "must establish, as a matter of law, all essential elements of the issue before the nonmovant can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

The court finds that plaintiff has made a sufficient record to resist defendant's motion for summary judgment as to the official capacity claim, but he has not met the *Pelt* standard such that his own motion for partial summary judgment should be granted. The official capacity claim will also be submitted to the jury.

It is the order of the court that the motion of the plaintiff for partial summary judgment (#124) is hereby denied. The motion of defendant for summary judgment (#122) is also hereby denied.

ORDERED THIS 26th DAY OF JULY, 2023.

Ronald A. White
United States District Judge
Eastern District of Oklahoma

22